# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MONDREA VINNING-EL, #B-63459,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CAUSE NO. 01-CV-994-WDS** |
| ) | |
| **J. WALLS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court for Findings of Fact and Conclusions of Law following a bench trial held on August 14, 2007. The parties have submitted proposed findings of fact and conclusions of law (Docs. 239, 240) and the Court rules as follow pursuant to Fed. R. Civ. P. 52(a):

## INTRODUCTION

Plaintiff, Mondrea Vinning, is an inmate in the Illinois Department of Corrections who, in August of 2001, was housed at Menard Correctional Center and was beaten in his cell by his cellmate. Plaintiff claims that: (1) defendants Donald Snyder, Jonathan Walls, and Roger Cowan implemented a policy of celling inmates by race that led to fights between plaintiff and his cellmate; and (2) defendant Scott Long failed to protect plaintiff from a risk of violence from his cellmate on August 10, 2001.

Plaintiff also claims that defendant C/O Reid failed to protect plaintiff from a risk of violence from his cellmate on August 10, 2001. On May 14, 2007, the Clerk of the Court entered default against defendant Reid for failure to plead or otherwise defend as required by the Federal Rules of Civil Procedure. Plaintiff then filed a motion for default judgment as to defendant Reid

(Doc. 198). Defendant Reid did not appear at trial. Upon review of the record, the Court **FINDS** that plaintiff is entitled to default judgment against defendant Reid, as he is in default, and **DIRECTS** the Clerk of the Court to enter default judgment as more fully set forth herein. With respect to defendants Snyder, Walls, Cowan, and Long, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

I.    Events of August 10, 2001

On August 10, 2001, plaintiff was an inmate within the Illinois Department of Corrections. Before the 3:00 p.m. shift change on August 10, plaintiff was reassigned from cell 617 to cell 653 in the North 2 Cellhouse Segregation Unit at Menard Correctional Center. Upon arriving at cell 653, plaintiff, an African American male, realized his new cellmate was Marlon Franklin, also an African American male, with whom plaintiff had had prior altercations. An inmate who believes he is in danger from another inmate can place that inmate on his enemies list and the staff will then keep those inmates separate. Plaintiff had placed several inmates on his enemies list, but in August 2001, Marlon Franklin was not on plaintiff's list.

A. Defendant Correctional Officer Reid's Involvement

Plaintiff told defendant Reid before being placed into the cell that plaintiff and inmate Franklin had argued on prior occasions, and expressed his concerns to Reid that plaintiff and inmate Franklin would not be able to "get along," and that he was concerned that Franklin would injure him.[1] Reid placed plaintiff in the cell with inmate Franklin, despite plaintiff's concerns.

---

[1] A grievance plaintiff filed following the incidents of August 10, 2001, shows that plaintiff asked Reid to move him to a different cell for his safety, which Reid refused.

On August 10, at some time before the 3:00 p.m. shift change, plaintiff and Franklin engaged in a fight. During the altercation, plaintiff suffered a laceration above his left eye and a contusion to his right leg. Plaintiff testified at trial that he continues to experience sensitivity to light and poor vision while reading, as well as pain in his right leg after vigorous activity.

### B. Defendant Correctional Officer Long's Involvement

Plaintiff also testified that, after the altercation, he informed defendant C/O Long, who started working at 3:00 p.m., that he had been injured. Plaintiff was taken to the infirmary, and after treatment, Long transported plaintiff back to cell 653. Plaintiff testified that he asked Long to be moved from this cell because he thought inmate Franklin and he would fight again, but Long placed him back in the cell anyway. Plaintiff testified that after Long left, plaintiff and inmate Franklin argued with each other and had a "shoving match," but plaintiff did not suffer further injury from this event. Long testified that he does not recall anything from August 10, 2001, including whether plaintiff asked not to be placed in the cell with Franklin.

## II. Celling Policy

Cell assignments and changes at Menard Correctional Center are coordinated between the supervisory officers in each cellhouse, usually a superintendent, and the Placement Office. Criteria for cell assignments at Menard require that: (a) cellmates have similar aggression level ratings; (b) members of rival gangs be kept separate; (c) inmates designated as vulnerable are housed separately from those designated as predators; and (d) inmates be separated from declared enemies. The Placement Office is responsible for applying all celling criteria to determine the appropriateness of an assignment. A correctional officer does not have the authority to move an inmate even when there is an apparent conflict between cellmates, but must inform his

supervisors of the situation.

Defendant Snyder was the Director of the Illinois Department of Corrections for a period including August 2001. The Director of the Illinois Department of Corrections is not involved in specific cell assignments at Menard Correctional Center. Defendant Cowan was the Warden of Menard Correctional Center for a period ending August 1, 2001, and was succeeded by defendant Walls beginning August 1, 2001. Defendants Snyder, Cowan and Walls were not involved in deciding where plaintiff would be housed in August 2001. Defendants Snyder, Cowan and Walls also testified that they did not implement a policy at Menard that required placing inmates in cells based on race. Defendant Cowan and Walls testified that they could not verify whether inmates of different races were celled together in the North 2 Segregation Unit in August of 2001. Although inmates Corwyn Brown, Terrance Harden, and Cliffton Williams testified that they never saw inmates of different races placed in the same cells in North 2 Segregation Unit, plaintiff did not establish any policy or clear practice of housing inmates at Menard based on race.

## **CONCLUSIONS OF LAW**

I.　Failure to Protect

Plaintiff claims that defendants Reid and Long violated the Eighth Amendment of the United States Constitution by failing to protect plaintiff from an injury caused by a fellow inmate. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To succeed on such a claim, plaintiff must demonstrate that each defendant (1) exposed plaintiff to a "substantial risk of serious harm" (2) with "deliberate indifference." *Id.* at 834.

First, "substantial risks" mean "risks so great that they are almost certain to materialize if

4

nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2007).[2] Injuries suffered as a result of a physical altercation with another inmate constitute "serious harm," as "being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* (internal quotations and citations omitted).

Second, a prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. A prisoner demonstrates a prison official's actual knowledge by showing that he complained to prison officials about a specific threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Exposure to a risk of harm, alone, does not warrant imposing liability; if harm is averted, plaintiff cannot recover. *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996). If harm is not averted, a prison official's reasonable response to that risk of harm still shields him or her from liability. *Farmer*, 511 U.S. at 844.

A. Defendant Correctional Officer Reid

Based on the foregoing findings of fact, the Court makes the following conclusion of law with respect to defendant Reid:

1. Defendant Reid exposed plaintiff to a substantial risk of serious harm.

The unrefuted evidence adduced at trial reveals that, by placing plaintiff and inmate Franklin in a cell together, defendant Reid exposed plaintiff to a *substantial* risk of harm because

---

[2]The *Brown* Court explained that the Seventh Circuit has yet to clarify at what point a "risk of harm" becomes substantial enough to impose liability on a failure to protect claim. *Brown*, 398 F.3d at 911. In defining "substantial risk of harm," the *Brown* Court borrowed a standard that the Seventh Circuit previously used to resolve a sexual harassment claim brought under Title IX in *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004). *Id.* The *Brown* Court explicitly stated that, in the context of prisoner cases, "risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who pose a 'heightened risk of assault to the plaintiff' are themselves sufficient to establish a 'substantial risk.'" *Id.*

5

a fight between plaintiff and inmate Franklin would almost certainly occur if they were left in a cell together. *Brown*, 398 F.3d at 911. Prior to entering his new cell with inmate Franklin, plaintiff informed defendant Reid that: (1) he and inmate Franklin had argued on prior occasions; (2) he and inmate Franklin would not get along, (3) he feared inmate Franklin would injure him. In other words, plaintiff notified defendant Reid that inmate Franklin posed a heightened risk of harm to plaintiff.[3] Second, the harm to which defendant Reid exposed plaintiff was *serious* because inmate Franklin injured plaintiff's eye and leg during a physical altercation between them. *Brown*, 398 F.3d at 911.

2. Defendant Reid acted with deliberate indifference.

The Court **FINDS** that defendant Reid knew of an excessive risk to plaintiff's health because plaintiff timely warned him about that risk, *Pope*, 86 F.3d at 92, and that defendant Reid disregarded that excessive risk to plaintiff's health. Despite listening to plaintiff's complaints and concerns, the evidence adduced at trial shows that Reid placed plaintiff in the cell with inmate Franklin and ignored plaintiff's requests to be transferred to a different cell. Although Reid lacked the authority needed to transfer plaintiff to a different cell, there is no evidence in the record that Reid satisfied his duty to report plaintiff's concerns to his supervisor, thereby placing plaintiff at a significant risk of harm.

Accordingly, the Court **FINDS** Defendant Correctional Officer Reid liable for failure to protect plaintiff from a substantial risk of serious harm.

Plaintiff claims that he is entitled to $200,000.00 in compensatory damages, in part, for the pain resulting from the injuries he sustained during his physical altercation with inmate

---

[3]*See supra* note 1.

6

Franklin. He also claims $100,000.00 in punitive damages for the evil motive and reckless indifference that defendant Reid exhibited in celling plaintiff with inmate Franklin. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Upon review of the record, the Court **FINDS** that, although the evidence adduced a trial establishes that plaintiff suffered damages, it fails to establish the exact value of those damages suffered or, more significantly that those damages were substantial. The Court also **FINDS** that an award of $200,000.00 in compensatory damages for the injuries plaintiff sustained would unjustly enrich plaintiff in this case, as it would overcompensate plaintiff for the loss he suffered as a result of defendant Reid's deliberate indifference. Accordingly, the Court **FINDS** that an award of $1,000 in damages is reasonable, in light of the evidence, to compensate plaintiff for his injuries. Although the evidence adduced at trial establishes that Reid acted with deliberate indifference in placing plaintiff in a cell with inmate Franklin, the record falls short of establishing that defendant Reid did so with the evil motive or intent necessary to award punitive damages in this case. Accordingly, the Court **FINDS** that plaintiff is not entitled to punitive damages and, accordingly, **DENIES** plaintiff's request for punitive damages.

### B. Defendant Correctional Officer Long

Based on the foregoing findings of fact, the Court makes the following conclusions of law with respect to defendant Long:

Following the treatment plaintiff received for the injuries he received while fighting with inmate Franklin before the 3:00 p.m. shift change, defendant Long transported plaintiff back to his cell, where Franklin was still housed. Plaintiff asked Long to be moved from that cell stating that he feared Franklin and he would fight again. After defendant Long left, plaintiff and Franklin

7

engaged in an additional physical altercation or altercations, but, by his own testimony, plaintiff did not suffer any injury from these altercations. Because plaintiff did not suffer any injury after returning to his cell with inmate Franklin, harm was averted and, therefore, plaintiff is not entitled to recover from defendant Long on his failure to protect claim. *Babcock*, 102 F.3d at 272.

Accordingly, the Court **FINDS** defendant Correctional Officer Long is not liable to plaintiff for violating plaintiff's rights under the Eighth Amendment and enters judgment in favor of defendant Long and against plaintiff on plaintiff's claim that Long failed to protect plaintiff from a substantial risk of serious harm.

II.     Cell Placement Based on Race

Plaintiff also claims that defendants Snyder, Walls, and Cowan violated plaintiff's constitutional rights under the Fourteenth Amendment and 42 U.S.C. § 1983 by placing prisoners in cells based on race. *Johnson v. Cal.*, 543 U.S. 499, 512 (2005). Under the strict scrutiny standard, racial classifications "are constitutional only if they are narrowly tailored measures that further compelling governmental interests." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995). Prison security and discipline are compelling government interests that justify narrowly tailored uses of race based classifications. *Johnson*, 543 U.S. at 512.

Simply put, plaintiff failed to establish that defendants implemented any type of policy of placing inmates in cells based on race at Menard Correctional Facility. At most, plaintiff established that he and three of his fellow inmates never witnessed inmates of different races being placed in the same cell in North Cellhouse 2 Segregation Unit. Even if plaintiff and his fellow inmates observed the racial composition of cells in other portions of Menard Correctional Center, and even if none of the individual cells they observed housed members of different races,

8

their casual observations simply cannot support an inference that Menard Correctional Center did not house interracial cellmates at any time or that Menard did house inmates based on racial makeup. Furthermore, even if their observations could independently support such an inference, that inference does not, without more, lead to the conclusion that Menard Correctional Center officials implemented a policy of housing cellmates based on race.

At best, plaintiff's observations support the defendants' belief that an unintended consequence of the Placement Office considering certain factors before placing inmates in cells may often lead to inmates being housed with others of the same race. For example, members of white supremacist gangs could not be housed with members of another race due to legitimate concerns of prison security and discipline, both compelling government interests. *Johnson*, 543 U.S. at 510. Here, the policies used to protect the security of inmates survive strict scrutiny review. This is not, for example, a situation where a prison uses race as a proxy for gang membership and violence without narrowly tailoring its approach. *Id*. The evidence adduced at trial showed that prison officials considered race among other factors before placing inmates, but it failed to show that such a practice was not narrowly tailored to address the necessities of prison security and discipline.

The Court **FINDS** that plaintiff failed to establish that Menard Correctional Center places inmates in cells based solely on race and, therefore, his claim that defendants violated his constitutional rights must fail.

The Court **FURTHER FINDS** that plaintiff failed to establish that defendants Snyder, Cowan, and Walls participated in placing plaintiff in a cell with inmate Franklin on August 10, 2001. As the testimony at trial established, the Placement Office, not the Warden or the Director

9

of the Department of Corrections, determined where plaintiff would be housed.  Therefore, plaintiff failed to establish that defendants Snyder, Cowan, and Walls implemented a racially-motivated celling practice, and his claims against these defendants must fail.

Accordingly, the Court **FINDS** that Defendants Snyder, Cowan, and Walls are not liable on plaintiff's claim that they violated his Fourteenth Amendment rights.

## CONCLUSION

Plaintiff's motion for default judgment is **GRANTED** and default judgment is **ENTERED** in favor of plaintiff Mondrea Vinning and against defendant C/O Reid on plaintiff's Eighth Amendment failure to protect claim in the amount of $1,000 for compensatory damages.  Judgment is **ENTERED** in favor of defendant C/O Reid and against plaintiff Mondrea Vinning on plaintiff's claim for punitive damages.

Judgment is **ENTERED** in favor of defendant Scott Long and against plaintiff Mondrea Vinning on plaintiff's Eighth Amendment claim of failure to protect.

Judgment is **ENTERED** in favor of defendants Donald Snyder, Jonathan Walls, and Roger Cowan, and against plaintiff Mondrea Vinning on plaintiff's claim that defendants violated his Constitutional rights by implementing a policy of placing inmates in cells based on race.

Also before the Court are plaintiff's motion for preliminary injunction (Doc. 232) and amended motion for preliminary injunction (Doc. 236).  In his motion and amended motion, plaintiff complains of actions taken by the Department of Corrections after his trial, including assigning him to segregation and loss of good time credits, which he claims were made in retaliation for his filing the lawsuit and going to trial in this matter.   The Court directed the Department of Corrections to file a response, which it did (Doc. 235).  Upon review of the

record, the Court **FINDS** that the matters raised in plaintiff's motions (Doc. 232 and 236) are not part of this cause of action, and must be raised in a separate proceeding. Therefore, the Court **DENIES**, without prejudice to the filing of a new cause of action, plaintiff's motions for preliminary injunction and amended motion.

If plaintiff decides to pursue a cause of action related to these alleged actions of retaliation which occurred in August and October of 2007, the Court **DIRECTS** the Clerk of the Court to directly assign such a cause of action to this Judge for review.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: March 26, 2008**

 s/*WILLIAM D. STIEHL*
 **District Judge**